UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORI PRIBYL,

    Plaintiff,

v.                                                                                    Case No. 14-cv-13791
                                                      HON. MARK A. GOLDSMITH

FORD MOTOR CO., et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Dkts. 20, 21), and DISMISSING THE AMENDED COMPLAINT (Dkt. 18) WITH PREJUDICE**

## I.  INTRODUCTION

This is an employment and union grievance action.  Before the Court are Defendants Ford Motor Company's and Automotive Components Holdings, LLC's motion to dismiss and/or for summary judgment (Dkt. 20), and Defendant UAW Local 892's motion to dismiss and/or for summary judgment (Dkt. 21).  Defendants argue that dismissal of Plaintiff Tori Pribyl's amended complaint is appropriate for a variety of reasons, including insufficient pleadings under Federal Rule of Civil Procedure 8; the statute of limitations; failure to file an EEOC charge for her Title VII claim; and the absence of an employment relationship.  Plaintiff filed a response (Dkt. 26), and Defendants filed replies (Dkts. 27, 28).  The Court heard oral argument on May 7, 2015, and took the motions under advisement.  For the reasons discussed below, the Court grants Defendants' motions and dismisses Plaintiff's amended complaint with prejudice.

## II. BACKGROUND

In 2012, Plaintiff was an employee of Automotive Components Holdings. Am. Compl. ¶ 1 (Dkt. 18). According to Plaintiff, she left work early on June 11, 2012, because a co-worker had been harassing her about abruptly ending a relationship with him. Id. ¶ 3. Plaintiff then sought medical treatment for mental anguish. Id. ¶¶ 4-8. Plaintiff claims that she ultimately obtained a doctor's recommendation not to return to work until July 15, 2012. Id. ¶¶ 7-8.

On July 16, 2012, Plaintiff was suspended from work pending an investigation into claims that she had exposed herself to a fellow employee on June 11, 2012 before leaving work early. Id. ¶ 9. Plaintiff denies the allegation that she exposed herself. Id. ¶ 10.

Plaintiff was subsequently discharged on August 20, 2012. Id. ¶ 13. A disciplinary report provides the following explanation for the termination:

> Ms[.] Pribyl was involved in an incident on 6-10-12. The company investigation found that Ms[.] Pribyl exposed herself [on] the plant floor [to] several other employees. Ms[.] Pribyl also exhibited lude [sic] behavior, before lea[v]ing the plant unauthorized. This behavior cannot be tolerated. Discharged 8-20-12.

See id.; see also Disciplinary Action Report (Dkt. 26, page 12 of 28 (cm/ecf page)).

Plaintiff was a member of the UAW. Am. Compl. ¶ 14. The Union filed a grievance on her behalf, which went through three stages of review. See Jodey Dunn Aff. ¶ 8 (Dkt. 21-2). At the fourth stage, Jodey Dunn — a Union representative — determined that Plaintiff would not be successful before an umpire at arbitration. This decision was purportedly based on information gathered from Plaintiff, her employer, and other co-workers. Id. ¶¶ 9-12. Accordingly, Dunn withdrew the grievance, and notified Plaintiff — via letter — of this decision on August 20, 2013. Id. ¶¶ 12-13.

2

Plaintiff sent a handwritten letter to the Union President, Bob King. See Letter (Dkt. 26, pages 14-15 of 28 (cm/ecf pages)). Plaintiff's counsel also sent letters to Bob King. In March 2014, Ava Barbour, Associate General Counsel for the Union, responded to Plaintiff's counsel's letters, explaining why any litigation would be meritless. Union Letter (Dkt. 26, pages 19-20 of 28 (cm/ecf pages)).

Plaintiff alleges that although the UAW purportedly undertook to get her job back through its grievance procedures, she "was never advised of what must be considered vital information so as to assist with the process, specifically what was the content of the grievance filed with the company, who were the witnesses to her alleged violation and what specifically was she accused of having exposed in the allegation that she exposed herself." Am. Compl. ¶ 15.

Plaintiff claims that she was "wrongfully discharged as she is not guilt[y] of the allegations alleged," and that her "discharge was therefore in violation of her collective bargaining contract[.]" Id. ¶¶ 18-19. Plaintiff also claims that the Union "failed to properly represent her in that even if she had exposed herself[,] the allegation would not be sufficient a grievance that she shouldn't would [sic] have been able to get her job back had the union stood up for her." Id. ¶ 20. Plaintiff asserts that "the company is guilty of wrongfully discharging the plaintiff and union [sic] is guilt [sic] of malfeasance and misfeasance in its representation of the plaintiff, pursuant [to] 28 U.S.C. Sce. [sic] 1331, sec. 301 of the Labor Management Relations. [sic] Act, 29 U.S.C. Sec. 185." Id. ¶ 21. Plaintiff also claims that Defendants acted "against Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits employment discrimination based on race, color, religion, sex, or national origin." Id. ¶ 22. Plaintiff seeks "reinstatement,

3

back pay and 10,000,000.00 in damages jointly and severally" — although she fails to provide any explanation or basis for her demand for $10 million.

## III.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In evaluating a motion brought pursuant to Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (internal brackets, quotation marks, and citations omitted). To survive a Rule 12(b)(6) motion, the complaint must contain specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009). A complaint is subject to dismissal unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." Id. at 679.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). When evaluating the evidence, courts draw all inferences in favor of the non-moving party. Warf v. U. S. Dep't of Veterans Affairs, 713 F.3d 874, 877 (6th Cir. 2013).

## IV.  ANALYSIS

Defendants raise a number of arguments in support of dismissal and/or summary judgment.  Specifically, Defendants claim that Plaintiff's claims cannot survive because: (i) the amended complaint does not set forth the elements of Plaintiff's causes of action or the factual support for these claims; (ii) Plaintiff's Section 301 claim is time-barred; (iii) Plaintiff did not file a charge with the EEOC before asserting her Title VII claim in this Court; (iv) Plaintiff did not exhaust internal union remedies; (v) Ford was not Plaintiff's employer; and (vi) UAW Local 892 had no role in the ultimate decision of which Plaintiff complains.  The Court addresses the first three arguments in turn.  Because the Court concludes that these arguments conclusively resolve this matter, the Court need not and does not reach the remaining arguments.

**A.  Insufficient Pleadings**

Defendants first argue that Plaintiff's amended complaint fails to satisfy the requirements of Federal Rule of Civil Procedure 8, as further described in both Iqbal, 556 U.S. at 678, and an earlier Order in this case.  Defs. Ford and ACH Br. at 7-8.  Plaintiff responds that the "allegations in the complaint are simply that the plaintiff was wrongfully discharged by the company and that her grievances was [sic] either purposefully (malfeasance) or negligently (misfeasance) mishandled by the union; which if true provides a claim upon which the relief requested may be granted."  Pl. Resp. at 7.  The Court concludes that Plaintiff's amended complaint is deficient.

Defendants originally filed motions to dismiss in response to Plaintiff's initial complaint, arguing, in part, that the complaint was deficient under Rule 8 and the Supreme Court's decision in Iqbal.  Without expressing any view of the merits of the motions, the Court granted Plaintiff leave to file an amended complaint to cure the purported defects.  See 12/22/2014 Order (Dkt.

13). The Court warned Plaintiff, however, that "[a]ny amended complaint must . . . set forth each cause of action in a separate, clearly labeled section that recites the elements and factual support for each element." Id.

Plaintiff filed an amended complaint thereafter. Am. Compl. (Dkt. 18). Although Plaintiff added references to Section 301 of the Labor Management Relations Act and Title VII, the amended complaint still does not "recite[] the elements" for each cause of action, nor does it separately describe the "factual support for each element" of that claim. Compare 12/22/2014 Order, with Am. Compl. Consequently, despite being given an opportunity to amend her complaint within basic guidelines that were specifically set forth by the Court, Plaintiff's amended complaint remains deficient — failing to comply with the requirements set forth in the Court's Order allowing Plaintiff to amend. This alone is grounds for dismissal.[1]

Furthermore, and notwithstanding the foregoing failure to follow the Court's specific directions, the amended complaint also remains woefully deficient under the Federal Rules regarding what is alleged. For example, Plaintiff fails to set forth the elements for, or clearly define the contours of, her Title VII claim. Plaintiff also does not clearly state whether she is bringing a claim for "wrongful[] discharge" or for breach of a collective bargaining agreement. Am. Compl. ¶¶ 18-21. And if the latter, Plaintiff does not specify which provision(s) of the "collective bargaining contract" she believes were breached by her alleged "wrongful[]

---

[1] Plaintiff's counsel also appears to have misapprehended the impact of the Court's Order. Plaintiff claims that the Court has "twice ordered the defendants to file an answer to the complaint and [Defendants] twice hav[e] responded with the same motion to dismiss, which was previously dismissed." Pl. Resp. at 6. This fundamentally misunderstands what occurred. The Court originally denied without prejudice Defendants' motions to dismiss in light of Plaintiff's filing of an amended complaint. The Court did not order Defendants to file an answer to the amended complaint; indeed, the Court specifically considered that Defendants might file renewed motions to dismiss, stating that, if Defendants did so, "the briefing schedule set forth in Local Rule 7.1(e) shall apply." 1/7/2015 Order (Dkt. 19).

discharge[]." Id. ¶¶ 18-19; see Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 786-787 (6th Cir. 2007) (affirming dismissal of claim, because the plaintiffs failed to "identify any provision in the CBA that prohibits PMI from terminating them"); Harris v. Am. Postal Workers Union, 198 F.3d 245, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999) (affirming dismissal of claim under Rule 12(b)(6) where the "express terms of the CBA relating" to the claim at issue were not introduced, because "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached"). This further warrants dismissal under Federal Rule of Civil Procedure 8 and the Supreme Court's decisions in Iqbal and Twombly. See Iqbal, 556 U.S. at 678 (holding that a plaintiff must do more than rely on "[t]hreadbare recitals of the elements of a cause of action"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Dismissal with prejudice is appropriate, given that the Court already gave Plaintiff an opportunity to amend her complaint. See EEOC v. Ohio Edison Co., 7 F.3d 541, 546 (6th Cir. 1993) ("[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."); see also id. ("Denial may be appropriate, however, where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed . . ., etc." (quotation marks and citation omitted)). Notably, Plaintiff has not requested another attempt to amend. See Stambaugh v. Corrpro Cos., 116 F. App'x 592, 598 (6th Cir. 2004) (A "district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought."); Winget v. JPMorgan Chase Bank, N.A., 537 F.3d 565, 573 (6th Cir. 2008) ("Requiring the district court to both state the reasons for its dismissal and then allow [the plaintiff] to amend the Complaint without [the plaintiff]

having asked permission would be akin to mandating the district court to issue an advisory opinion.").

Accordingly, dismissal is appropriate based on the deficiencies in Plaintiff's amended complaint alone. Nevertheless, even addressing the merits of Plaintiff's claims, the Court concludes this case cannot proceed.

## B. Statute of Limitations

Defendants argue that Plaintiff's claim under Section 301 of the Labor Management Relations Act is time-barred. Defs. Ford and ACH Br. at 9-10; Def. UAW Br. at 6-8. Relying on affidavits attached to their motions, Defendants argue that Plaintiff learned of the Union's decision not to proceed with her grievance in August 2013. Defendants highlight that hybrid Section 301 claims carry a six-month statute of limitations, but that Plaintiff did not file this lawsuit until July 2014 — nearly one year after the notice was provided. Def. UAW Br. at 7.

Plaintiff responds that she did not receive final notice that the Union would no longer represent her until March 2014. Pl. Resp. at 3-4. In support of this claim, Plaintiff points to the letter from the Union's counsel, Ava Barbour, in response to Plaintiff's purported "appeal to the union" — i.e., the letter she sent to the Union president, Bob King. Id.; see also id. at 5 ("The union argues that the plaintiff failed to properly appeal that decision. Yet the plaintiff mailed a hand written letter to the President of the union asking for an appeal of that decision."). Plaintiff also argues, without citation to authority, that "if there were a defect in the plaintiff's appeal of [the] decision[,] the union was under a duty to inform her of the means to cure the defect so as to get her a hearing." Id. at 4. Plaintiff does not refute any of the affidavits attached to Defendants' motions, nor has she filed an affidavit or declaration seeking to conduct additional discovery on this issue pursuant to Federal Rule of Civil Procedure 56(d).

8

Plaintiff's claim arises under Section 301 of the Labor Management Relations Act. See Am. Compl. ¶ 21. It appears to be a "hybrid" Section 301 claim, which consists of two causes of action: "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983); see also Am. Compl. ¶¶ 19, 21 ("[T]he company is guilty of wrongfully discharging the plaintiff and [the] union is guilt [sic] of malfeasance and misfeasance in [its] representation of the plaintiff."). This type of claim carries a six-month limitations period. DelCostello, 462 U.S. at 154-155, 172; Garrish v. UAW, 417 F.3d 590, 594 (6th Cir. 2005). As relevant here, "the statute of limitations begins to run when a plaintiff knows that the union has withdrawn his [or her] grievance." Garrish, 417 F.3d at 595.

Plaintiff does not dispute that the Union withdrew her grievance and sent her notice of the withdrawal in or around August 2013. See Jodey Dunn Aff. ¶¶ 12-13 (Dkt. 21-2). Nor does Plaintiff dispute that she received the letter notifying her of this withdrawal more than six months before she filed her complaint, or that this letter informed her of the right to appeal that decision pursuant to Article 33 of the UAW Constitution. Id. at ¶ 13. Rather, Plaintiff contends that her letters to the President of UAW impacted the statute of limitations, such that the period did not begin to run until the UAW responded to the letter in March 2014. Pl. Resp. at 3-5.

The Court rejects this argument. First, courts — including the Sixth Circuit — have repeatedly held that pursuing informal procedures for relief, rather than the established union procedures, will not toll the statute of limitations. See Williamson v. Lear Corp., 183 F. App'x 497, 502 (6th Cir. 2006) ("easily reject[ing]" claim that the statute of limitations had been tolled

9

by plaintiffs who were seeking to appeal the union's decision, because "the plaintiffs did not comply with the procedural requirements of the UAW's appeal process. . . . Instead of appealing the initial denial on January 29, 2004, as is required under the UAW Constitution, the plaintiffs simply sent another letter to the UAW President, Ron Gettelfinger, stating their position"); Messer v. Vorhies, 663 F. Supp. 1069, 1070-1071 (E.D. Mo. 1987) (dismissing claim as time-barred, despite plaintiff's letter to Union's President after grievance was denied, because "[t]he bargaining agreement and by-laws . . . do not provide for appeal to the International President"); see also Long v. Gen. Motors Corp., 19 F. App'x 200, 202 (6th Cir. 2001) ("This circuit . . . has long held that informal activities to resolve employee complaints cannot be allowed to substitute for the formal contractual grievance procedures."); Brown v. United Auto., Aerospace & Agr. Implement Workers of Am., Local 892, 682 F. Supp. 901, 904 n.2 (E.D. Mich. 1987) (finding "persuasive defendant UAW's argument that due to plaintiff's lack of compliance with union appeal procedures, the statute of limitations was not tolled after he received notice of the disposition of his grievance"); Legutko v. Local 816, Int'l Bhd. of Teamsters, 853 F.2d 1046, 1054 (2d Cir. 1988) (a claimant must follow the established procedures set forth in the union's guidelines to claim that exhausting internal remedies tolls the limitations period).

In this case, Plaintiff did not follow the established appeals procedure after becoming aware that the Union withdrew her grievance in August 2013. The withdrawal notice instructed Plaintiff to refer to Article 33 of the UAW Constitution regarding how to appeal that decision. Although Plaintiff and her counsel sent letters addressed to the President of UAW's attention, she has provided no citation establishing that this was the appropriate appeal process. Article 33 does not mention sending a letter directly to the President of UAW for the claims at issue here. Compare Art. 33 (Dkt. 21-3, pages 13-14 of 22 (cm/ecf pages) (describing the levels of appeal)),

with id. at 15 of 22 (cm/ecf page) (describing filing appeals with the International President for disputes involving interpretations of a CBA in certain instances, or for decisions by the UAW National Skilled Trades Department pertaining to a journeyperson card). And Plaintiff does not assert that she could not read and understand Article 33 and its procedural requirements.

Plaintiff's counsel also acknowledged at the motions hearing that Plaintiff's handwritten letter neither mentioned the word "appeal," nor — to the extent it was sent after Jodey Dunn's decision — did it describe with particularity the decision from which Plaintiff sought review — Jodey Dunn's decision to withdraw the grievance.[2] And although Plaintiff's counsel's September 18, 2013 letter did state that counsel (incorrectly) believed the procedural "last appeal," was to Mr. King, see 9/18/2013 Letter (Dkt. 26, page 26 of 28 (cm/ecf page)), the letter neither mentioned Jodey Dunn's decision to withdraw the grievance, nor was it signed by Plaintiff. Thus, Plaintiff's correspondences did not comply with Article 33's requirements for an appeal, see Art. 33, § 4 (Dkt. 21-3, page 20 of 22 (cm/ecf page)), or even adequately inform the Union that a formal appeal from Jodey Dunn's decision was what Plaintiff intended through her letters. The Court consequently finds that instead of complying with the requirements of UAW's appeal process — as set forth in the UAW Constitution and highlighted in the letter informing Plaintiff of the withdrawal of her grievance — Plaintiff and her counsel simply sent vague letters to the UAW President. This is insufficient to toll the statute of limitations.

Therefore, Plaintiff's window for filing this lawsuit began in August 2013 and expired in February 2014. Plaintiff's lawsuit — filed five months later — is time-barred. See Howell v. Gen. Motors Corp., 19 F. App'x 163, 168 (6th Cir. 2001); Dunleavy v. Local 1617, United

---

[2] To the extent the handwritten letter was sent in June 2013, i.e., before Jodey Dunn's decision, it certainly could not serve as an appeal of the final decision under Article 33. See Ex. F. to Pl. Resp., page 23 of 28 (cm/ecf page) (noting that Plaintiff's counsel's June 2013 letter to Bob King "accompanied plaintiff's handwritten appeal").

11

Steelworkers of Am., 814 F.2d 1087 (6th Cir. 1987) (statute of limitations can be equitably tolled if the claimant acts diligently in pursuing internal union remedies).[3]

Second, the Union's March 2014 response letter does not serve as the start time for calculating the statute of limitations, as Plaintiff suggests. That letter was not the Union's final notification of its decision withdrawing the grievance, nor was it the "response to the plaintiff's appeal," as Plaintiff alleges. See Pl. Resp. at 4. Rather, in that letter, counsel for UAW International simply explained to Plaintiff's counsel why any threatened litigation would fail: the previous decision to withdraw the grievance was "within the wide range of reasonableness accorded to the UAW under Federal law" and, due to Plaintiff's failure to file an Article 33 appeal, "any litigation filed against the Union would be barred for failure to exhaust internal union remedies." See 3/14/2014 Letter (Dkt. 26, pages 19-20 of 28 (cm/ecf pages)).

Under Plaintiff's theory, counsel or their clients could simply send informal letters to the union to extend the start date for the statute of limitations, regardless of whether this follows the appropriate grievance and/or appeal procedure. The employee would thus have unilateral control over the start and corresponding length of the statute of limitations, based solely on an expectation that the union will respond to the communication. Plaintiff cites no authority for so broad a proposition, nor is the Court aware of any. See Legutko, 853 F.2d at 1054 (informal correspondence does not toll limitations period, because otherwise a plaintiff could cause

---

[3] Notably, although Plaintiff generally discusses her handwritten letter to the Union President and the Union's March 2014 response, she does not use the word "toll" anywhere in her brief, nor does she cite any authority discussing tolling the statute of limitations. Indeed, Plaintiff — represented by counsel — does not cite a single case or authority in the argument portion of her response to Defendants' motions. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); Wholesale Petroleum Partners L.P. v. S. Cent. Bank of Daviess Cnty., Inc., 565 F. App'x 361, 366 (6th Cir. 2014) (declining to address an issue, because the party "offer[ed] no citations to any legal authority in support of its position").

"indefinite[] delay"); see also Saxton v. Gen. Motors Corp., 575 F. Supp. 1212, 1217 (N.D. Ohio 1983) (concluding that writing an informal letter was insufficient to toll the statute of limitations, because the court could not, "in good conscience, allow the statute of limitations to be tolled whenever a union member decides to attempt his own informal method of changing the minds of the decision-makers," because "[s]uch a rule would lead to chaos, would be inconsistent with national labor policy, and would be impossible of equitable and even-handed application."), aff'd, 780 F.2d 1023 (6th Cir. 1985).

Plaintiff last suggests, without citation to any authority, that the Union acted wrongfully in failing to inform Plaintiff that her letters to the Union President did not constitute a proper appeal. Pl. Resp. at 4 ("[I]f there were a defect in the plaintiff's appeal of Mr. Dunn's decision[,] the union was under a duty to inform her of the means to cure the defect so as to get her a hearing."). Although unclear, Plaintiff may be raising this argument as another bases for trying to avoid the statute of limitations. Nevertheless, this argument is meritless. The August 2013 letter specifically referred to Article 33, thereby clearly directing Plaintiff to the applicable procedures she must follow if she desired to appeal the decision. The letter also offered for Plaintiff to contact Jodey Dunn if she had any questions, but there is no evidence that Plaintiff did so.

Further, Plaintiff was represented by counsel at the time of the August 2013 letter. See 6/18/2013 Letter from Plaintiff's Counsel (Dkt. 26, page 24 of 28 (cm/ecf page)). This undermines the suggestion that the Union should be held responsible for Plaintiff's alleged failure to understand the proper appeal procedure.

Accordingly, the Court concludes that the statute of limitations began to run when Plaintiff was informed that the Union withdrew the grievance in August 2013, and her letters to

the Union President did not toll this period. The March 2014 letter was not the final notice of the Union's decision, as Plaintiff alleges, but instead merely explained to Plaintiff and her counsel why any litigation would be meritless. Therefore, Plaintiff's claim under Section 301 is time-barred.

## C. Title VII Claim

Defendants next argue that Plaintiff's claim under Title VII is subject to dismissal, because she failed to file an EEOC charge before bringing this claim. Defs. Ford and ACH Br. at 10-11; Def. UAW Br. at 8-9. Plaintiff does not respond to this argument, other than to unclearly state the following: "In the amended complaint the plaintiff contended what it [sic] believed to be the motive behind a purposeful mishandling of the grievance as sexual discrimination; although we still believe that to be the motive behind the mishandling of the grievance we withdraw that portion of the complaint at this time." Pl. Resp. at 7.

Plaintiff's language suggests that she has expressly abandoned this claim. Furthermore, even if she has not expressly abandoned it, her failure to respond to the arguments raised in Defendants' motions on this claim allows the Court to deem this claim abandoned. See Doe v. Bredesen, 507 F.3d 998, 1007-1008 (6th Cir. 2007); Meredith v. Allen Cnty. War Mem'l Hosp. Comm'n, 397 F.2d 33, 34 n.2 (6th Cir. 1968); Mekani v. Homecomings Fin., LLC, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010).

Accordingly, the Court dismisses Plaintiff's claim brought pursuant to Title VII.

## D. Plaintiff's Motion for Judgment on the Pleadings

In response to Defendants' motions, Plaintiff also claims to be bringing a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Pl. Resp. at 5-11: Plaintiff argues, as follows:

> As neither defendant answered the complaint by admitting or denying the allegations made therein, it must be assumed that they admit the allegations and stand upon the plaintiff's failure to otherwise follow some proper procedure as their only defense. Having addressed the issues in their motion for dismissal the plaintiff moves for a judgment on the pleadings.

Id. at 11.

In light of the Court's ruling on Defendants' motions, Plaintiff's request is moot. Accordingly, the Court denies Plaintiff's request for judgment on the pleadings.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss and/or for summary judgment (Dkts. 20, 21), and dismisses Plaintiff's amended complaint with prejudice. The Court will issue a judgment contemporaneously with this decision.

SO ORDERED.


Dated:  July 10, 2015                         s/Mark A. Goldsmith
            Detroit, Michigan                    MARK A. GOLDSMITH
                                                 United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2015.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager